Gilman vs. Gross.

GILMAN, Assignee, Respondent, vs. GROSS, Appellant.

*September 29 — October 22, 1897.*

*Corporations: Conditional subscriptions to stock: Delivery: Parol evidence to prove condition: Liability of stockholders.*

1. A subscription for corporate stock is not binding upon either party until it is delivered to and accepted by the corporation.
2. Parol evidence is admissible, in an action to collect a subscription for corporate stock, to show that the written subscription was by express agreement not to be delivered to the corporation or be binding on the subscriber until a certain number of other persons had each subscribed for a like amount.
3. One who holds capital stock issued to him by a corporation as collateral security for its debt to him, if to be deemed a stockholder, cannot, upon the insolvency of the corporation, be held liable as such to creditors whose claims accrued before he became such, and who could not therefore have been misled by his possession of the stock.

APPEAL from a judgment of the circuit court for Milwaukee county: D. H. JOHNSON, Circuit Judge. *Reversed.*

This is an action by the assignee for the benefit of its creditors of an insolvent corporation, the Reliance Wire & Iron Works, to collect from the defendant $1,000, the amount of an alleged unpaid stock subscription for ten shares of the stock of the corporation. The defendant, at the solicitation of the president of the corporation, signed a written subscription for shares of its capital stock to the amount of $1,000, with the express understanding and agreement that such subscription was not to be binding on the defendant until nor unless ten stock subscriptions of $1,000 each had been obtained. The subscription was not delivered to the corporation, but was left in the custody of the party soliciting subscriptions for the purpose of obtaining further subscriptions, and was not to be delivered to the corporation until at least ten subscriptions of $1,000 each should have

Gilman vs. Gross.

been obtained. Such ten subscriptions were not obtained, and the subscription paper was not delivered to the corporation, but was kept among the private papers of its president, who had solicited the subscriptions. Yet the defendant was charged, upon the books of the corporation, with $1,000 for stock subscription, and an entry made on the stock book of stock issued to him, though none was in fact issued to him, and he was ignorant of these entries. Afterwards the defendant became the owner of a claim against the corporation of $1,000. The corporation gave him its note for $1,000, and for collateral security to it, and not otherwise, issued to him shares of its unissued stock to the amount of $1,000. Soon afterwards the corporation made its assignment for the benefit of its creditors to the plaintiff, who brings this action, as such assignee, to recover from the defendant an alleged subscription for the corporate stock to the amount of $1,000. This was the cause of action alleged. It is not alleged nor shown by the evidence that any of the debts of the corporation were incurred subsequent to the issue of the stock to the defendant. The action was tried by the court, without a jury. The plaintiff had judgment for the amount claimed, from which the defendant appeals.

For the appellant there was a brief by *Winkler, Flanders, Smith, Bottum & Vilas,* and oral argument by *F. C. Winkler.*

For the respondent, *Nathaniel S. Robinson* argued, among other things, that parol evidence was inadmissible to show a condition as to the delivery of the subscription. *Foster v. Clifford,* 44 Wis. 569; *Hubbard v. Marshall,* 50 id. 322; *Callanan v. Judd,* 23 id. 343; *Wayland University v. Boorman,* 56 id. 657; *Davy v. Kelley,* 66 id. 452. The subscription was in fact delivered and the proper entries made in the books of the corporation, and the defendant was absolutely bound as a stockholder. Thompson, Corp. § 2937; *Sleeper v. Goodwin,* 67 Wis. 577; *Adderly v. Storm,* 6 Hill, 624, 628; *Magruder v. Colston,* 44 Md. 356; *Crease v. Babcock,* 10 Met.

545; *Matter of Reciprocity Bank,* 22 N. Y. 18. This rule applies even where the stock was issued by the corporation to the holder as collateral to a loan. *Wheelock v. Kost,* 77 Ill. 296; *Ind's Case,* 7 Ch. App. 485. The assignee of the corporation can maintain the action even though only a part of the creditors would be benefited. *Sawyer v. Hoag,* 17 Wall. 610, 612; *Valley Lumber Co. v. Hogan,* 85 Wis. 366.

NEWMAN, J. No important fact is in dispute on the evidence. The contention in this court relates entirely to questions of the competency of certain testimony, the proper inference to be drawn from undisputed facts, and the appropriate conclusions of law therefrom.

First is the question whether the oral testimony to show the condition on which the subscription was to be delivered and to become operative was competent to be received and have effect. The evidence shows without dispute that it was the agreement that the subscription was, not to be delivered to the corporation, or to be deemed a subscription at all, until a certain number of persons had subscribed to it, and that such others did not subscribe. This establishes clearly and beyond dispute that the subscription did not become operative and binding upon the defendant. But it is said that this evidence was inadmissible and incompetent for the purpose, because its effect was to vary the terms of the writing. This position is untenable, both in reason and on authority. In the proof of a contract are two elements,— whether an agreement was made, and its terms. Whether the parties consummated an agreement is, in general, subject for proof and refutation by oral testimony. It must be so in the nature of the subject itself. The delivery or nondelivery of such a writing is a significant fact as bearing on this question of a completed contract. Generally, such promises do not become operative, as contracts, before delivery. The fact of delivery or non-

delivery is ordinarily almost incapable of proof except by oral testimony. If it is wrongly delivered, contrary to the agreement of the parties, such delivery has no effect to make it become operative and binding. So, the question whether it was delivered in fact, contrary to the agreement on that behalf, is always necessarily open to question on parol testimony. This in no degree infringes upon the rule that the writing is the exclusive evidence of the terms of the contract. This is elementary. Many cases illustrating it are cited in appellant's brief. See, also, Jones, Ev. § 478; 23 Am. & Eng. Ency. of Law, 791, and cases cited in note 2.

This subscription was left in the custody of Mr. Hall, with the agreement that it was not to be delivered to the corporation nor to become operative until the further subscriptions contemplated had been secured. The fact that Mr. Hall was the president of the corporation is without significance on this question. The contemplated subscriptions were not obtained, and the paper was not delivered to the corporation. It required both a delivery of the subscription to the corporation and the assent of the corporation to it to make it binding as a subscription for stock upon either party. *Badger Paper Co. v. Rose*, 95 Wis. 145; *Franey v. Warner*, 96 Wis. 222. So it is clear that the defendant never became liable to the corporation as a subscriber to its stock by reason of this written subscription.

It is clear, also, that by the arrangement whereby he received the stock as security for his claim, he did not become liable to the corporation to pay for the stock. Clearly, that is directly contrary to the intention of the transaction. So, it is clear that the corporation had no claim against the defendant for unpaid stock subscription which it could enforce in an action.

The question now comes whether the plaintiff, who represents the corporation creditors, has a greater right against the defendant than the corporation itself has. The general

rule, no doubt, is that, except in cases where creditors have been deceived and misled by the corporation pretending to have a capital which it has not, a creditor can enforce no right against a shareholder greater than the corporation itself could enforce against him. 3 Thompson, Corp. § 2953. One who became a creditor before the issue of the stock to the defendant has no equity to question the transaction whereby the defendant became its holder. Id.; *Hospes v. N. W. Mfg. & Car Co.* 48 Minn. 174, 196; *Coit v. Gold Amalgamating Co.* 119 U. S. 343; *Handley v. Stutz,* 139 U. S. 417, 435. Sec. 3226, R. S., provides no different rule for the liability of stockholders. It provides that, in the case provided, "the court shall compel each stockholder to pay in the amount due and remaining unpaid on the shares of stock held by him," etc. This plainly means "due and remaining unpaid" to the corporation. There can be nothing *due* the corporation except according to the terms of the contract which it has made with the stockholder.

There is no evidence to show when the corporation incurred its indebtedness to the creditors who are represented by the plaintiff. So, it fails to show that such creditors were deceived or misled by the defendant's relation to these shares of stock which he held as security, and so fails to show that the plaintiff or those whom he represents have equities superior to the equities of the defendant, who is also a creditor. So, the evidence fails to show a right in the plaintiff to recover on the ground of superior equity.

But it is urged that this view of the law is in conflict with the so-called "trust-fund" doctrine, as held by this court. That doctrine has been much criticised and limited by the decisions of the courts and by this court. It is said in *Ford v. Hill,* 92 Wis. 188, that "the mere fact of insolvency of a corporation does not convert the corporate property into a trust fund, so as to prevent preferences." In *Ballin v. Merchants' Exch. Bank,* 89 Wis. 278, it is held

that the corporate property does not become a trust fund in any such sense as to withdraw it from the power of legal process to subject it to the payment of the claims of the diligent creditor. It certainly is not going much further to hold that, so long as the corporation is still a going concern, it may in good faith use the corporate property to pay or secure its *bona fide* debts. So, the cases are in complete harmony.

But, even if the "trust-fund" doctrine did prevail in its utmost vigor, it is at least doubtful if it could avail the plaintiff in this action; for this is a straight action at law to recover on the alleged contract of subscription, while the trust-fund doctrine is equitable, and to be enforced in an action in equity. The transaction out of which this alleged equity arose was not alleged in the complaint, nor whether the indebtedness was incurred subsequent to the transaction. Nor was there evidence on the latter question. Indeed, such evidence would have been entirely irrelevant to the case made by the complaint; and, indeed, it is not clear that the complaint can be helped, in that respect, by amendment. It is not permitted by amendment to change an action at law into an action in equity, even when the facts would sustain either action. *Carmichael v. Argard*, 52 Wis. 607.

It may be that the defendant is to be deemed a stockholder in the corporation, within the meaning of sec. 1769, R. S., and, as such, liable for the wages of clerks, laborers, and servants to the amount of the stock held by him. *Sleeper v. Goodwin*, 67 Wis. 577. But this is entirely irrelevant to the case made by the complaint and proofs. Indeed, it is not questioned that he is a stockholder, in a general sense, but he is not liable to pay for his stock, beyond the obligation of his contract with the corporation, except to creditors whose claims accrued since he became such stockholder.

*By the Court.*— The judgment of the circuit court is reversed, and the cause remanded with direction to dismiss the complaint.