## MARTIN, TRUSTEE, *v.* STEINKE.

*Corporations—Stock subscription conditional upon happening of future event—Subscriber not liable to trustee in bankruptcy, when—Evidence—Parol evidence admissible to prove written instrument delivered upon unfulfilled condition.*

1. The manual delivery of a written instrument may always be shown by parol evidence to have been on a condition which has not been fulfilled, in order to avoid its effect.
2. One who signs a written subscription to the capital stock of a corporation and delivers the same to an authorized agent of said company upon an oral agreement that the same shall not become binding upon said subscriber until the happening of a future event, which never occurs, is not liable to a trustee in bankruptcy representing the creditors of said company, unless it be shown that the creditors extended credit to said company in reliance upon said subscription and without notice of said oral condition.

(Decided November 16, 1925.)

ERROR: Court of Appeals for Summit county:

*Messrs. Burch, Bacon & Denlinger* and *Messrs. Wilcox, Berk, Berk & Harvey,* for plaintiff in error.
*Messrs. Musser, Kimber & Huffman,* for defendant in error.

PARDEE, P. J.   The parties stand in this court as they did in the court below.   The plaintiff is the duly appointed and qualified trustee in bankruptcy of the Greenwich Rubber Company, a corporation organized and existing under the laws of the state of Ohio.   The plaintiff alleged in his petition that said corporation was organized with an authorized

capital stock of $250,000, the par value of its shares being $100 each, that on the second day of August, 1920, the defendant, with others, became subscribers to the capital stock of said company, that the defendant signed, executed, and delivered a written subscription for ten shares of stock and agreed to pay $1,000 therefor, and that said company accepted the same and entered into a contract with said defendant to deliver certificates of stock to him. The plaintiff further alleged that the defendant was asked to pay for the stock according to the terms of his subscription, but that he neglected and refused to do so. The plaintiff also alleged that said company incurred indebtedness, creditors dealt with the company, and others were induced to subscribe for the capital stock of the company, upon the faith of said subscription by defendant. Wherefore, the plaintiff asked judgment against the defendant for the amount of said subscription, with interest thereon.

To this petition the defendant filed an answer setting up four defenses: First, a general denial; second, that the corporation had not complied with the blue sky law as to the certification of its stock before obtaining the alleged subscription of defendant; third, that he was induced to sign said alleged subscription upon the condition and by reason of the representation of said company, through its agent, that said writing should not be delivered to the company and should not become a contract or binding upon him until and when he expressly directed and authorized said agent to deliver the same to the company, that the defendant never directed or authorized said agent to de-

liver the same, and that the same was never received and accepted by the company; and, fourth, the answer specifically denied that the corporation had at any time incurred any indebtedness or obligations by reason of said alleged subscription of said defendant, and that no creditor had dealt with said company upon the faith of such subscription.

The reply which was filed by plaintiff, in substance, denied that there was any such agreement as claimed by defendant, but alleged if there was one, said agent was holding said subscription, if any was held by him, as the agent of the defendant, and that the said stock subscription was delivered to the agent on the 2d day of August, 1920, and delivered by him to said company, and allowed to remain in the hands of said company until June 20, 1922, the day on which said company became bankrupt. The plaintiff further alleged, as stated in his petition, that credit had been obtained by said company upon the strength of said subscription, that creditors' rights had intervened and become fixed, that others had been induced to subscribe for stock in said company on the strength of said subscription, and that defendant had failed to exert himself in any way in time to recover from the company said stock subscription.

Upon the issues thus made, the case went to trial to a jury, which resulted in a verdict being returned for the defendant, and the case is now here on error to reverse the judgment entered on the verdict.

The oral evidence shows that said stock subscription was signed and delivered by defendant to the president of the company on or about the 2d day

of August, 1920, and was taken by the president to the office of the company, turned over to the book-keeper therein, and entered upon the stock ledger as a stock subscription for $1,000. The evidence further shows that such stock subscription was signed and delivered with an oral understanding between the president of said company and said defendant that the same was not to be binding upon the defendant until and after he had notified said president and said company that it was to be a binding obligation upon him. The record further shows the said defendant never notified the president or the company that he intended to have said subscription become a binding obligation upon him, and that said stock subscription was improperly entered upon the books of the company. This claim of the defendant is fully sustained by his own evidence and by the evidence of the president of the company.

But the complaint is made that the admission of oral evidence to sustain the claims of the defendant was improper, and that such admission constituted prejudicial error.

We do not think so. This evidence was admitted not for the purpose of contradicting or varying the terms of the subscription, but for the purpose of showing that there was not any contract; and it is a well-known principle of law that oral evidence under these circumstances may be admitted to show the situation at the time the subscription was signed and delivered.

"The manual delivery of an instrument may always be proved to have been on a condition which has not been fulfilled, in order to avoid its effect.

This is not to show any modification or alteration of the written agreement, but that it never became operative, and that its obligation never commenced." *Wilson* v. *Powers*, 131 Mass., 539.

In the case of *Gilman, Assignee*, v. *Gross*, 97 Wis., 224, 72 N. W., 885, the second paragraph of the syllabus reads as follows:

"(2) Parol evidence is admissible, in an action to collect a subscription for corporate stock, to show that the written subscription was by express agreement not to be delivered to the corporation or be binding on the subscriber until a certain number of other persons had each subscribed for a like amount."

And on pages 226, 227 (72 N. W., 886) of the opinion, the court says: "In the proof of a contract are two elements,—whether an agreement was made, and its terms. Whether the parties consummated an agreement is, in general, subject for proof and refutation by oral testimony. It must be so in the nature of the subject itself. The delivery or nondelivery of such a writing is a significant fact as bearing on this question of a completed contract. Generally, such promises do not become operative, as contracts, before delivery. The fact of delivery or nondelivery is ordinarily almost incapable of proof except by oral testimony. If it is wrongly delivered, contrary to the agreement of the parties, such delivery has no effect to make it become operative and binding. So, the question whether it was delivered in fact, contrary to the agreement on that behalf, is always necessarily open to question on parol testimony. This in no degree infringes upon the rule that the writ-

ing is the exclusive evidence of the terms of the contract. This is elementary.''

And in the case of *Tonica & Petersburg Rd. Co.* v. *Stein,* 21 Ill., 96, the syllabus reads as follows:

''Where the defendant authorized the secretary of a meeting to subscribe for shares of railroad stock for him, by putting his name to a blank sheet of paper; and the name was subsequently transferred to the subscription books of the company, without any further authority: *Held,* that the defendant might show by parol evidence, that he authorized the subscription only on certain conditions.''

This doctrine as to admission of parol evidence has been recognized in Ohio in the case of *Morris* v. *Faurot,* 21 Ohio St., 155, 8 Am. Rep., 45.

See, also, Jones on Evidence in Civil Cases (3d Ed.), p. 727, Section 471.

In the case of *Yoder* v. *Hoyt,* 18 C. C. (N. S.), 433, 33 C. D., 140, the syllabus reads:

''Fraud may be pleaded as a defense in an action to recover unpaid stock subscriptions, even after bankruptcy of the corporation, if no debts of the corporation were contracted after the subscription.''

In the opinion, at page 434, the court says: ''There is no allegation in the amended petition that the rights of any creditors of the corporation accrued *after the subscription* of the defendant, or that any debts were contracted by the corporation upon the faith or credit thereof.''

Applying the above rule as to fraud, although not claimed as a defense, to the instant case, we find that the evidence of the defendant cast the

burden upon the plaintiff to show in rebuttal, if under the allegations of his petition he was not obliged to show it in chief, that the rights of creditors accrued after the subscription of said defendant, or that debts were contracted by the corporation thereafter; in other words, that the defendant by his conduct is estopped, as against the plaintiff, who represents the company's creditors and others, from setting up as a defense to the subscription the oral agreement made by him with the president of the company at the time of the execution and delivery of the subscription.

There can be no doubt that said company was insolvent at the time it was declared a bankrupt, but there is not any evidence in the record that we have been able to discover which shows when said company became insolvent, or which shows the amount of the indebtedness of the company, if any, at the time the stock subscription was received by the company and entered upon its books, or which shows that the rights of any creditors accrued after the subscription of said defendant, or that the corporation contracted any debts upon the faith or credit thereof, or that any one changed his position in reliance upon said subscription.

It is true that there is evidence in the record tending to prove that said stock subscription was included among the assets of said company, and that copies of its financial statement showing its assets and liabilities, with this subscription included among its assets, were given to commercial credit concerns, but there is a total failure of evidence to show that any creditor saw one of these statements and relied thereon.

For the purpose of this opinion, subscriptions to the capital stock of a corporation may be divided into (1) an unconditional subscription, (a) a valid subscription, and (b) a voidable subscription; (2) a conditional subscription; and (3) a subscription delivered conditionally.

It must always be borne in mind in the instant case that the defendant is not making the claim that his subscription was obtained by fraud, or that his was a conditional one, but his defense is that it was a *conditional delivery of a stock subscription.* In cases of subscriptions induced by fraudulent representations, "the principle of law that fraud vitiates all contracts applies to a contract of subscription, but this principle means, not that the contract is void *per se* from the formation of the contract, but that the contract is voidable, at the option or election of the person defrauded. Until such election is exercised, the contract is enforceable by both or either of the parties. Hence a subscription to stock, obtained by fraudulent representations, is not void from the time when it was made, nor is it void until it is ratified and confirmed by the defrauded subscriber, but it is valid until it is expressly rescinded and repudiated by the subscriber. This principle is important in determining the method of rescission, and particularly the time within which a rescission must be made." Cook on Corporations (8th Ed.), vol. 1, Section 151, p. 520.

"In this country the effect of corporate insolvency upon the right of a subscriber to rescind his contract for fraud has not been passed upon so often as in England. The decisions, however, clear-

ly hold that corporate insolvency is, as a rule, a bar to such rescission." *Ibid*, Section 164, p. 544.

A conditional subscription has been defined as follows:

"A conditional subscription is one on which payment can be enforced by the corporation only after the occurrence or after the performance by the corporation of certain things specified in the subscription itself." *Ibid*, Section 77, p. 402.

The defendant not attempting to avoid the effects of said subscription because the same was obtained by fraud, but relying entirely upon the claim that there was no contract of subscription, he is entitled to maintain this defense as against the plaintiff, as trustee of said company, and against those who did not know of said subscription and did not rely thereon to their injury. For plaintiff to maintain his action for the benefit of the creditors of the company, it would be necessary for him to prove that creditors extending credit to the company knew of the subscription and did not know of the oral condition attached thereto, or such a state of facts as would amount to an estoppel and prevent the defendant from claiming the benefits of the oral condition attached to the subscription.

In the instant case we have, as hereinbefore stated, a conditional delivery, as distinguished from a conditional subscription. In the latter, the corporation is to do something before the subscription becomes obligatory, the subscription being a continuing offer by the subscriber which becomes binding when accepted by the corporation by the performance of the condition imposed. In the instant case, the subscriber reserved to himself the right

to say when the subscription should become binding upon him—or in other words, the company made him a continuing offer to sell him its shares of stock, which would become a binding obligation upon both when and after he indicated his willingness to take and pay for the same, and not before.

For the plaintiff to maintain his case upon the theory of estoppel, it is his duty to comply with the rule announced by ·the Supreme Court of this state in the first paragraph of the syllabus of the case of *Kroll* v. *Close, Admr.,* 82 Ohio St., 190, 92 N. E., 29, 28 L. R. A. (N. S.), 571, as follows:

"The burden is upon the party who relies upon estoppel, to prove clearly and unequivocally every fact essential to the estoppel."

We are therefore not permitted to indulge the presumption, that because there were liabilities at the time the company was declared insolvent that any of said liabilities were created after the date of said subscription and in reliance thereon. The presumption might as well be indulged that all of said liabilities were created before, instead of after, the date of said subscription.

We are of the opinion, therefore, in cases involving the conditional delivery of a stock subscription and the avoidance of liability thereon, that the subscriber is entitled to be relieved from the obligation of said subscription unless creditors or others dealing with said company knew of and relied upon said stock subscription and were induced to extend credit to said company or change their position in relation to said company, to their injury, upon the strength of said subscription, and in this case there is no evidence to show that any creditor

extended any credit to said company with knowledge of said subscription and in reliance thereon.

''This doctrine, however, is to be applied only in 'cases strictly between the original parties, and where no one has changed his situation in reliance upon the contract and in ignorance of the secret oral condition attached to the delivery.' Nor does it apply to a case where the agent of the subscriber violates his instructions not to deliver it until certain conditions have been performed.

''A subscriber may be estopped to show that his subscription was delivered conditionally, under the principle that a person, who, by his words or conduct, willfully causes another to believe in the existence of a certain state of facts, and thereby induces him to act on that belief so as to alter his previous condition, is estopped to deny the existence of those facts to the other's prejudice.'' Fletcher on Corporations, Vol. 2, Section 600, pp. 1308, 1309.

But the plaintiff claims that when said subscription was delivered to the president of the company, the president was either the agent of the defendant or the agent of the company, and that if he was the agent of the defendant the delivery by said agent to said company of said stock subscription, although unauthorized, was binding upon said defendant.

But with this latter contention we do not agree, as the evidence clearly shows that the subscription was delivered to the president as the authorized agent of the company, and that he agreed to hold the same upon the conditions hereinbefore set forth. *Mansfield, C. & L. M. Rd. Co.* v. *Brown,* 26 Ohio St., 223.

But the plaintiff claims that, if this be true, there could not be such a conditional delivery, because it was a delivery to the company itself, which would prevent the defendant from claiming the benefit of the oral contract as herein set forth.

But with this contention also we disagree.

"It is a settled general principle in most jurisdictions that it may be shown that a written agreement, including contracts of subscription, was delivered with the understanding that it should not take effect until the performance or fulfillment of an oral condition, even though the delivery may have been to an agent or even a director of the corporation, the evidence being admitted in such a case, not for the purpose of adding a condition to the contract or agreement, but for the purpose of showing that as yet there has been no contract or agreement at all." Fletcher on Corporations, Vol. 2, Section 600, p. 1308.

The plaintiff, as trustee, is trustee not only for the creditors of the company, but for the company itself, and the evidence failing to show any facts which would or should estop the defendant from asserting the oral contract, made at the time of the signing and delivery of the stock subscription, the defendant is entitled to all of his rights as against the plaintiff which he would otherwise have if the company had not become insolvent, among which would be the right to avail himself of all of the benefits of the oral contract, although the subscription may have been delivered and held by the agent of the company.

We are, therefore, of the opinion that the court properly charged the jury upon the issue as to

whether or not the oral contract suspending the effect of the written instrument was made as claimed by the defendant, and that the jury's finding upon said issue was properly made. We are also of the opinion that there not being any evidence that any credit was extended to said company by any creditor after the date of said subscription, or that any one changed his position to his injury in reliance thereon, the court did not commit any error in failing fully to charge upon that question.

We are, therefore, unanimously of the opinion that there are no errors in the record prejudicial to the plaintiff in error, and the judgment will therefore have to be affirmed.

*Judgment affirmed.*

Washburn and Funk, JJ., concur.