## KENNISON v. INTERNATIONAL CLAY MACH. CO.

(Circuit Court of Appeals, Sixth Circuit. July 7, 1926.)

No. 4575.

1. **Sales** ⬥465.

Filing conditional sales contract in county where nonresident purchaser first came into actual physical possession of the property *held* substantial compliance with Gen. Code Ohio, § 8568.

2. **Sales** ⬥465.

Under Gen. Code Ohio, § 8568, time within which conditional sales contracts must be filed is not limited.

3. **Sales** ⬥473(2).

Delivery by seller to carrier of machinery sold under conditional sales contracts *held* not to pass title to purchaser, so as to require contracts to be filed in county of delivery to be valid as against subsequent purchasers.

4. **Sales** ⬥473(1).

Reorganization of company which had full knowledge of conditional sales contract on machinery placed on its property under contract with purchaser *held* not subsequent purchaser in good faith, within Gen. Code Ohio, § 8568, irrespective of whether contract was filed or not.

5. **Sales** ⬥17.

Where nonresident contractor purchased machinery to be installed under contract with company financially unable to supply materials, finding that contractor was acting in behalf of company where installation was made *held* proper.

Appeal from the District Court of the United States for the Western Division of the Northern District of Ohio; John M. Killits, Judge.

Action between Frank P. Kennison, receiver of the Clay Products Manufacturing Company, and the International Clay Machinery Company. From the decree, the former appeals. Affirmed.

Frank P. Kennison is the duly appointed and qualified receiver of the Clay Products Manufacturing Company, an Ohio cor-

poration, and successor to all the rights, assets, and liabilities of the Monroeville Clay Products Company, which was also an Ohio corporation. The International Clay Machinery Company is a Maine corporation, having its office and principal place of business in the city of Dayton, Montgomery county, Ohio. The American Dressler Tunnel Kilns, Inc., is a New York corporation, and prior to November, 1920, had no office or place of business in the state of Ohio. On September 30, 1919, the kiln company entered into a contract with the Monroeville Clay Products Company to construct for it a tunnel kiln at its plant at Monroeville, Huron county, Ohio.

The kiln company thereupon entered into six written contracts with the machinery company, by the terms of which the machinery company was to manufacture and sell to the kiln company the material and equipment necessary to equip this kiln, in which contracts it was provided that the property therein described should remain the property of and should be subject to the order of said machinery company until paid for in full. These contracts were dated March 3, 1920, April 20, 1920, May 21, 1920, June 1, 1920, and July 22, 1920. Before the delivery of any of this machinery under these conditional sales contracts, the Monroeville Clay Products Company was reorganized under the name of the Clay Products Company, which company took possession of the assets of the Monroeville Clay Products Company and assumed all its liabilities. This appeal involves the validity of these contracts as against the creditors of the Clay Products Manufacturing Company.

At the time the conditional contracts were made, the property described therein was not in existence, except in the form of material or parts to be assembled in the plant of the International Clay Machinery Company, but when it was manufactured at Dayton, Montgomery county, Ohio, it was shipped under the direction of the kiln company to Monroeville, and installed by the kiln company in the plant of the Clay Products Company located at Monroeville, Huron county, Ohio. All of these conditional sales contracts were recorded in Huron county.

It is claimed on behalf of the receiver of the Clay Products Company that the filing of these contracts was not in compliance with the provisions of section 8568 of the Ohio General Code, because they were contracts relating to chattel property not then in existence, but which was later to be manufactured by the machinery company, and for the further reason that these contracts were not filed in the proper county, and that both the Monroeville Company and the Clay Products Company were subsequent purchasers in good faith; that the receiver is a creditor within the meaning of section 8568, G. C., and that for these reasons the title retention provision of these contracts are void as against the Clay Products Company and its receiver.

The issue was referred to a special master, who found that neither the Monroeville Company, nor its successor, the Clay Products Company, was a subsequent purchaser in good faith of the chattels, or any part thereof, described in these contracts, but that said contracts should have been filed in Montgomery county, and not in Huron county, and that, while these contracts were good as between the original parties, including the Clay Products Manufacturing Company, successor of the Monroeville Company, that the appointment of a receiver for the Clay Products Company was equivalent to the fastening of a lien, by attachment, execution, or otherwise, by the creditors of that company as of the date of his appointment, and for that reason these contracts are void as against the receiver and the creditors of said company. The master further found that the property described in Exhibits 3 to 6, inclusive, is of a value of $9,135, which amount, by virtue of the consent order and decree of sale entered July 3, 1923, should be set aside out of the proceeds of the sale as representing the value of this property in case the court should reverse the master's holding in reference to the chattels described in Exhibits 3 to 6, inclusive.

Upon the hearing of the exceptions to the master's report, the District Court affirmed the master's finding as to the property described in Exhibits 1 and 2, which were not filed prior to the appointment of the receiver, and sustained the exceptions as to the chattels described in Exhibits 3 to 6, inclusive, and further held that the machinery company is the owner of this property, represented by funds aggregating $9,135, to be set aside from the proceeds of the sale of the property of which these chattels are a part. From this decree, sustaining the exceptions to the referee's report as to the property described in Exhibits 3 to 6, inclusive, the receiver appeals. No appeal was taken by the machinery company from the decree of the court sustaining the findings of the master

as to property described in Exhibits 1 and 2, inclusive.

Geo. E. Taylor, of Toledo, Ohio (Ritter & Brumback and Geo. W. Ritter, all of Toledo, Ohio, on the brief), for appellant.

H. W. Morgan, of Toledo, Ohio (E. H. & W. B. Turner, of Dayton, Ohio, and Geddes, Schmettau, Williams, Eversman & Morgan, of Toledo, Ohio, on the brief), for appellee.

Before DENISON, DONAHUE, and MOORMAN, Circuit Judges.

DONAHUE, Circuit Judge. Section 8568 of the General Code of Ohio provides, among other things, that when personal property is sold, to be paid for in whole or part in installments, the title to remain in the vendor until the value of the property has been paid, such agreement in regard to title shall be void as to all subsequent purchasers and mortgagees in good faith and creditors, unless the contract is in writing, signed by the purchaser, and a copy thereof, with affidavit attached thereto, stating the amount of the claim, be deposited with the county recorder of the county where the purchaser signing the instrument resides at the time of its execution, if a resident of the state, and, if not such resident, then with the county recorder of the county where the property is situated at the time of the execution of the instrument. The purchaser was not a resident of the state, and the property was not in existence at the time of the execution of these contracts; therefore, if this statute is to be strictly construed, it can have no application to the facts of this case, because it would be impossible of performance.

[1] If, on the other hand, this statute is to be construed with reference to the intent of the General Assembly of Ohio and the evident purpose to be accomplished thereby, then these contracts were properly recorded in Huron county, where the property first came to rest after it was manufactured by the plaintiff and shipped to Monroeville, Huron county, Ohio, where it first came into the actual physical possession of the Kiln Company. This was a substantial compliance with the terms and provisions of section 8568, G. C., and clearly within the intent and purpose of that section.

[2] Section 8568, G. C., does not require conditional sale contracts to be filed with the recorder until the seller surrenders the possession of the goods to the buyer. Nor does it limit the time in which such contracts must be filed. On the contrary, it has been held in Ohio (Tischler v. Seeley, 14 Ohio Cir. Ct. R. 236, affirmed without opinion 60 Ohio St. 629, 54 N. E. 1110) that a conditional sale contract is valid from the date of its filing, although not filed until 6 months after its execution, and but a few minutes before the filing of a chattel mortgage upon the same property. It was also held, in Berlin Machine Works v. Hilton & Dodge Lbr. Co., 126 F. 627, that under a similar statute of the state of Georgia, which required conditional sales contracts to be recorded within 30 days from their date, the date from which the 30 days should be reckoned was the date of the delivery of the goods sold, and not the date of the making of the contract, or of its acceptance by the seller, thereby giving full effect to the legislative intent and purpose, although a strict construction of the language of the statute would require recording within 30 days from date of contract, even if the property were still in the possession of the seller.

Potter v. Arthur (6 C. C. A.), 220 F. 843, 136 C. C. A. 589, Ann. Cas. 1916A, 1268, is particularly applicable to the question here presented. In that case a machine was sold and delivered f. o. b. Indianapolis, with a reservation of title in the seller until the purchase price was paid; but it was contemplated by both the seller and the buyer that, before any use by the buyer, the property should be transported into another state. It was held that recording statutes must be construed with reference to the situs, and not with reference to the actual place of sale, or where it is delivered to a common carrier, to be transported to the place in which it is to be permanently or quasi permanently located. While the question there involved was whether the filing of the contract was controlled by the law of Indiana, where the sale and delivery were made, or the law of Ohio, where the property sold was to be used by the buyer, yet the principle involved applies with equal force to the facts of this case. If the Ohio statute were construed in line with appellant's construction, then a conditional sale contract, made in Indiana, for property then in Indiana, and delivered to the purchaser in Indiana, could not be filed for record in Ohio.

[3] It is further claimed on the part of the receiver that the delivery by the seller to the carrier in Montgomery county was a delivery to the kiln company, and for that reason the conditional sales contract should have been filed with the recorder of that county. That

contention, we think, is fully answered by this court in Potter v. Arthur, supra, even if it were conceded that the delivery of the carrier was an unconditional delivery to the kiln company. While it is true that, in case of the unconditional sale of chattel property, the delivery to a common carrier, consigned to the purchaser, is sufficient delivery to transfer title to the purchaser, in this case the title did not pass, and it was not intended to pass. The conditional contract of sale was good as between the parties without being filed with the recorder of any county. The delay in filing the conditional sales contract did not affect the rights of the parties thereto.

[4] It is also urged that the court erred in affirming the holding of the master that the Clay Products Company was not a purchaser in good faith. The Clay Products Company is a reorganization of the Monroeville Company, and had full knowledge of this transaction.

[5] After the contract was entered into by the Kiln Company and the Monroeville Company a subsequent contract was made between the same parties, by the terms of which the Monroeville Company was to purchase this property and to be credited with the cost upon the contract price for the construction of its kiln. It did make an effort to buy this property from the machinery company, but the machinery company refused to extend the credit and thereupon the Kiln Company made this purchase. While the Kiln Company became the purchaser, nevertheless, it was acting in and on behalf of the Monroeville Company, and, in effect, buying for the Monroeville Company what it had agreed to buy, but could not buy on its own credit. For this reason the master did not err in holding that the Clay Products Company was not a subsequent purchaser in good faith. In this respect the District Court was also right in holding that, while the Kiln Company was ostensibly the purchaser and became liable for the payment of the purchase price, nevertheless it was acting in and on behalf of the brick company, which company had agreed to supply these materials, but was financially unable to do so.

Conditional sale contracts are valid between the parties without being filed as required by section 8568, G. C., and as against everybody claiming an interest therein except the creditors of the purchaser or subsequent purchasers or mortgagees in good faith. The Clay Products Company is not a subsequent purchaser in good faith, and

therefore the contract is valid against it, whether filed or not.

Judgment affirmed.