(115 So. 471)

No. 28744.

RICAU v. COUVILLION.

Jan. 18, 1928.

*(Syllabus by Editorial Staff.)*

1. Corporations ☞262(2)—Stock subscription made on condition of subscribers closing out business and employment with corporation, which event did not occur, held unenforceable by receiver.

Stock subscription signed by subscriber and given to president of company with understanding between subscriber and president that it was not to become enforceable unless subscriber closed out business and was in position to take employment in corporation, which event did not occur, *held* not enforceable by receiver of corporation, since it was tentative and never became operative and binding.

2. Evidence ☞444(2)—Parol evidence held admissible to show condition upon which stock subscription was signed and delivered to corporation.

In receiver's suit on stock subscription where subscriber signed subscription for corporate stock with oral agreement with president of corporation that subscription should not become operative until subscriber had closed out business and taken employment with corporation, which event did not occur, *held*, that parol evidence was admissible to show condition since it did not vary or change legal effect of writing, but showed that contract was never made; delivery being conditional.

Appeal from Ninth Judicial District Court, Parish of Rapides; R. C. Culpepper, Judge.

Suit by Gus J. Ricau, receiver for C. C. Gaspard, Inc., against Foster Couvillion. From a judgment of dismissal, plaintiff appeals. Affirmed.

Deutsch & Kerrigan and M. S. Taylor, all of New Orleans, and Bruton T. Dawkins, of Alexandria, for appellant.

Peterman, Dear & Peterman, of Alexandria, for appellee.

BRUNOT, J. This is a suit by the receiver of C. C. Gaspard, Inc., to recover $20,200, alleged to be due the company by defendant on his unpaid stock subscription for 200 units of its capital stock, and for 15 per cent. thereon as attorney's fees. The district judge rejected plaintiff's demand and dismissed the suit at his cost. The appeal is from that judgment.

The petition alleges that defendant, by written contract, subscribed for 200 units of the capital stock of C. C. Gaspard, Inc., each unit consisting of one share of preferred stock of the par value of $100 and one share of common stock of the par value of $1; that he contracted to pay said subscription in six equal monthly installments; and that he has defaulted on all of said payments. Plaintiff annexes and makes the stock subscription a part of his petition and prays for judgment against the defendant for $20,200, with 5 per cent. per annum interest thereon from judicial demand, for 15 per cent. upon the sum of the principal and interest as attorney's fees, and for costs.

The defendant admits signing the document annexed to plaintiff's petition, but denies that it constitutes a contract of subscription between himself and the company. He admits his alleged domicile and that amicable demand for payment was made upon him, but he denies all other allegations of the petition and says:

"Further answering, respondent shows the true facts to be that there was never any contract of subscription between himself and C. C. Gaspard, Inc.; that he was asked by the president of said company to accept a position with them at a certain salary; that he was unable to accept said offer at the time and would give

no definite answer until he ascertained whether he could dispose of his business in Alexandria and arrange his affairs so as to move to New Orleans; that he was induced by the president of said company to sign the alleged subscription upon the condition, and by reason of the representation of the said company through its president, that said writing or alleged subscription should not be delivered to the company and should not become a contract, or become binding upon respondent until and when he expressly directed and authorized said president to deliver the same to the company; that respondent never directed or authorized the president of said company to deliver the same, and that the same was never received and accepted by the company; that respondent was assured at the time said document was signed it would be held by the president of said company in his private papers, and respondent believes, and therefore alleges, that it was so held and never delivered to the company, but was obtained by the receiver without the knowledge or consent of the president of said company, and with the knowledge that it was not a binding contract nor intended to be one; that respondent never did consent to become a stockholder under said alleged subscription; that respondent, when he was advised that said document had improperly and illegally come into the hands of said company, notified them of the fact that the delivery of said alleged stock subscription to the president was a conditional delivery; that he did not intend for it to be delivered to the company, and that he was not to be bound thereby and had no intention of taking said stock; that there was not in fact, nor as a matter of law, any contract ,between respondent and said company."

On the trial of the case only two witnesses testified to the facts alleged in the petition and answer. Mr. W. J. Broussard, the former secretary of the company, was sworn and testified as a witness for the plaintiff, and the defendant was called for cross-examination and testified in his own behalf. There is no disagreement between the witnesses as to the facts. In substance, the testimony of Mr. Broussard is that he is familiar with the transaction which gave rise to the suit. He had discussed with Mr. C. C. Gaspard, the president of the company, the conditions under which the stock subscription sued upon was delivered to Mr. Gaspard by the defendant, and Mr. Gaspard admitted that it was

delivered to him conditionally; that it was not intended to take effect unless the defendant accepted a position with the company and moved to New Orleans. He also testified that he attended a meeting of the board of directors of the company, at. which meeting Mr. Gaspard refused to deliver the subscription blank signed by Mr. Couvillion to the company, and, as his reason for refusing to do so said:

"That subscription was not given by Mr. Couvillion to bind him, because, in other words, it was given to him on condition. that the company would give him a position, provided he, Mr. Couvillion, was able to adjust and arrange his affairs here in Alexandria, and that he wasn't going to deliver this subscription to any one, if it took a regiment of men."

This witness also said that he saw Mr. Gaspard place the subscription blank in a little black box in which he kept his private papers. Mr. Couvillion also testified that Mr. Gaspard placed the subscription among his private papers, and his explanation of the conditions under which it was signed follows:

"Mr. Gaspard wanted me to go down to New Orleans and be an active officer with the company. I told him I couldn't—I had my business in Alexandria; that I didn't have money to take stock in the company and to run my cotton business here, and that I couldn't leave the business here unless I could sell out, and he says. 'Give me a subscription and I will hold it until you advise me to turn it over to the company.' He opened his drawer and put the subscription in the drawer and said nobody would know a thing about it until I could get out of this compress and dispose of my interests here."

The attention of the witness was called to the blanks in the subscription, and his answer follows:

"It's a conditional subscription, and we couldn't put any amount in it or dates; he was to be notified later."

The facts proved fully establish the defense set up in the answer. The contentions of plaintiff are, quoting from his brief, that:

"First. Parol evidence is inadmissible to vary, change, alter, or contradict the terms of a written stock -subscription contract when the evidence relates to matters antedating the confection of the written contract."

"Second. A subscription for stock in a corporation cannot be given conditionally to the president of the corporation, who is the agent of the corporation to receive stock subscriptions; the delivery of the subscription to the president is a delivery to the corporation itself."

[1, 2] The contentions of plaintiff are answered by the following authorities:

In 1 Thompson on Corporations (2d Ed.) p. 639, it is said:

"The question sometimes arises as to the admissibility of parol evidence to show that an apparently perfect subscription was conditional. Subscriptions are sometimes made on certain conditions; one familiar condition being that the subscription is not to be delivered until the subscriber investigates certain matters and then authorizes the delivery; another one being that the subscription is not to be delivered until a certain number have subscribed, or until a certain amount has been obtained. In actions to enforce such conditional subscriptions, the question arises as to the admissibility of parol evidence to show the condition. The basis of the objection is that it is an attempt to vary the effect of a written instrument. In such case it is not the purpose of the parol evidence to vary or change the legal effect of the writing, but its purpose is to show that no such contract was in fact made, and under proper pleading it is held to be admissible."

In the case of Martin v. Steinke, 22 Ohio App. 146, 154 N. E. 47, the Court of Appeals of Ohio had before it a case strikingly similar to the one at bar, and in that case the court said:

"The oral evidence shows that said stock subscription was signed and delivered by defendant to the president of the company on or about the 2d day of August, 1920, and was taken by the president to the office of the company, turned over to the bookkeeper therein, and entered upon the stock ledger as a stock subscription for $1,000. The evidence further shows that such stock subscription was signed and delivered with an oral understanding between the president of said company and said defendant that the same was not to be binding upon the defendant until and after he had notified said president and said company that it was to be a binding

obligation upon him. The record further shows the said defendant never notified the president or the company that he intended to have said subscription become a binding obligation upon him, and that said stock subscription was improperly entered upon the books of the company. This claim of the defendant is fully sustained by his own evidence and by the evidence of the president of the company.

"But the complaint is made that the admission of oral evidence to sustain the claims of the defendant was improper, and that such admission constituted prejudicial error.

"We do not think so. This evidence was admitted not for the purpose of contradicting or varying the terms of the subscription, but for the purpose of showing that there was not any contract; and it is a well-known principle of law that oral evidence under these circumstances may be admitted to show the situation at the time the subscription was signed and delivered."

" 'The manual delivery of an instrument may always be proved to have been on a condition which has not been fulfilled, in order to avoid its effect. This is not to show any modification or alteration of the written agreement, but that it never became operative, and that its obligation never commenced.' Wilson v. Powers, 131 Mass. 539."

In the case of Gilman, Assignee, v. Gross, 97 Wis. 224, 72 N. W. 885, the court said:

"In the proof of a contract [there] are two elements, whether an agreement was made, and its terms. Whether the parties consummated an agreement is, in general, subject for proof and refutation by oral testimony. It must be so in the nature of the subject itself. The delivery or nondelivery of such a writing is a significant fact as bearing on this question of a completed contract. Generally, such promises do not become operative, as contracts, before delivery. The fact of delivery or nondelivery is ordinarily almost incapable of proof except by oral testimony. If it is wrongly delivered, contrary to the agreement of the parties, such delivery has no effect to make it become operative and binding. So, the question whether it was delivered in fact, contrary to the agreement on that behalf, is always necessarily open to question on parole testimony. This in no degree infringes upon the rule that the writing is the exclusive evidence of the terms of the contract. This is elementary."

Without quoting therefrom, we cite Jones on Evidence (3d Ed.) p. 727; Tonica & Petersburg R. Co. v. Stein, 21 Ill. 96; Yoder v.

Hoyt, 18 Ohio Cir. Ct. R. (N. S.) 433; Mansfield, C. & L. M. R. Co. v. Brown, 26 Ohio St. 223; 1 Thompson on Corp. (2d Ed.) p. 670.

For the reasons stated, we find that the judgment appealed from is correct, and it is therefore affirmed at appellant's cost.