**JOSEPH TURK MFG. CO. v. SINGER STEEL CO.**

Civ. A. No. 26814.

United States District Court
N. D. Ohio, E. D.

Dec. 12, 1951.

Morris Berick and Edwin Knachel (both of Halle, Haber, Berick & McNulty), Cleveland, Ohio, for plaintiff.

Ezra Z. Shapiro and Joseph H. Persky, Cleveland, Ohio, for defendant.

McNAMEE, District Judge.

Plaintiff is a corporation organized under the laws of Illinois and is a citizen of that state. Its business is the manufacture of furniture.

Defendant, an Ohio corporation, is engaged in the business of warehousing and jobbing steel at Cleveland, Ohio.

Steel Producers, Inc., is an Ohio corporation with its main office at Dayton, Ohio and a rolling mill located at Toronto, Ohio.

This action is based upon the claim that 171 tons of steel which had been delivered to Steel Producers, Inc., under an agreement reserving title in plaintiff, were converted by the defendant.

Defendant denies the alleged conversion and asserts the additional defenses:

1. That the title to the steel had passed to Steel Producers, Inc.

2. If title had not passed, the transaction between plaintiff and Steel Producers, Inc., was a conditional sale, and plaintiff's failure to file the conditional sale agreement for record, as required by Section 8568, G.C. of Ohio, made plaintiff's reservation of title void as to defendant, a subsequent purchaser for value in good faith.

3. That plaintiff is estopped to assert that defendant converted the steel.

The record discloses a series of relevant primary and collateral transactions requir-

ing for their exposition a somewhat lengthy statement of facts.

In May, 1948 the Joseph Turk Manufacturing Company purchased 1,000 tons of steel sheet bars from a mill at Portsmouth, Ohio. This purchase was made for plaintiff by Briggs & Turivas, acting through its Vice President, Harry Alpirn. Plaintiff proposed to have the sheet bars rolled into steel sheets for use in the manufacture of furniture.

In June, 1948 plaintiff entered into a contract with Steel Producers, Inc., wherein the latter agreed to roll 500 tons of steel sheet bars for the plaintiff at a cost of $39.95 per ton. In consideration thereof plaintiff agreed to sell to Steel Producers, Inc., the balance of 500 tons of steel sheet bars at a price of $105 per ton f. o. b. Toronto, Ohio, to be paid for by applying the cost of rolling the first 500 tons on the purchase price and paying the balance to plaintiff in cash.

It was also expressly agreed that the 500 tons of steel bars sold to Steel producers, Inc., were to remain the property of the Joseph Turk Manufacturing Company "until paid for by Steel Producers, Inc."

No formal conditional sale agreement was executed or recorded, as required by Section 8568 of the General Code of Ohio.

The 500 tons of sheet bar to be rolled for the Joseph Turk Manufacturing Company were received by Steel Producers, Inc., at Toronto, Ohio, between July 8 and July 17, 1948.

During the month of July, 1948 Albert Singer, President of the defendant company, learned of the transaction between plaintiff and Steel Producers, Inc. Singer obtained this information from David Stein, who had acted as agent for plaintiff in negotiating the transaction between plaintiff and Steel Producers, Inc.

On July 27, 1948 Albert Singer loaned Stein $2,500, taking as security therefor an assignment of Stein's commission agreement with plaintiff. About this time Singer, at the solicitation of Stein, was also considering making a loan to Steel Producers, Inc. In this connection he made a trip to Toronto, Ohio, with Stein to in-

spect the rolling mill of Steel Producers, Inc. Stein knew all of the facts connected with the transaction between plaintiff and Steel Producers, Inc., having received from the principals copies of the letters embodying the terms of their agreement. He claims to have given all this information to Singer. This is denied by Singer.

Early in August, 1948 defendant received an inquiry from one of its customers for a substantial amount of 13 gauge steel sheets. At this time the 500 tons of steel bar sold by Turk to Steel Producers had not been delivered; nor had these bars been manufactured or rolled by the mill at Portsmouth, Ohio. Both Stein and a representative of the Singer Steel Company called Harry Alpirn of Briggs & Turivas, who, at their request, obtained the consent of plaintiff to a change in the footweights of the undelivered 500 tons of steel bars so as to make them suitable for rolling into steel sheets of 13 gauge. The telephone call received by Alpirn from defendant was from either Albert Singer, President, or Mervas, then General Manager of the Singer Steel Company.

In this telephone conversation either Singer or Mervas told Alpirn that the Singer Steel Company "wanted to get the sheet bar rolled to 13 gauge." Alpirn inquired what footweight would be required, and was informed by the representative of the Singer Company to whom he was talking, that the mill would be able to make that determination from the size of the steel sheets that were specified.

In this same telephone conversation Alpirn told the Singer representative "that the sheet bar belonged to the Joseph Turk Manufacturing Company and we would have to take it up with them before we could get permission to change the size of the sheet bar."

After obtaining the consent of the Joseph Turk Manufacturing Company to the desired change in the specifications of the steel bars, Alpirn so informed Stein, who notified Singer that Steel Producers, Inc., would be able to fill defendant's order for 13 gauge steel.

On August 9, 1948 Singer Steel Company placed an order with Steel Produc-

ers, Inc., for approximately four hundred tons of 13 gauge steel at $11.50 per hundred-weight, delivery to be made within four weeks. This order was accepted by Steel Producers, Inc., on September 21, 1948.

Between September 28 and October 14, 1948 Singer paid $30,000 in advance to Steel Producers, Inc., to apply on its order of August 9, 1948 and made an additional payment of $5,000 on November 29, 1948.

The 500 tons of steel sold by the Joseph Turk Manufacturing Company to Steel Producers was shipped from the mill at Portsmouth, Ohio, on or about September 27, 1948 and received by Steel Producers, Inc., in Toronto, Ohio, on September 28, 1948. Without making payment for the steel bars, Steel Producers, Inc., used a portion thereof to fill defendant's order.

Steel Producers, Inc., commenced shipments on Singer Steel's order for 13 gauge steel on October 23, 1948. A total of 145.8 tons were delivered pursuant to Singer's order. This was processed out of 171 tons of sheet bar which was received by Steel Producers, Inc., from the Joseph Turk Manufacturing Company on September 28, 1948.

In October, 1948 Singer, together with Stein and one Galente, organized the G & S Corporation. Singer had a one-third interest in this company. Later in the same month the G. & S. Corporation loaned Steel Producers, Inc., the sum of $100,000, taking as security therefor a chattel mortgage on the equipment of Steel Producers, Inc., and an assignment from all of its stockholders of their interest in the corporation. At the same time the G & S Corporation obtained signed, undated resignations from the officers of Steel Producers, Inc.

On December 7, 1948, after learning that Steel Producers, Inc., had used plaintiff's steel in filling the order for defendant, Joseph Byron, Secretary of the Joseph Turk Manufacturing Company, together with plaintiff's counsel, Philmore Haber, and Harry Alpirn, met Albert Singer in the latter's office. Also present at this meeting were Frank A. Weidman, President of Steel Producers, Inc., and Messrs. Polizzi and Novasel, who were associated with Steel Producers, Inc.

At this meeting Singer admitted that he knew that steel of the Joseph Turk Manufacturing Company was used by Steel Producers, Inc., in filling defendant's order. Singer also promised to pay for the steel that was used. In connection with these admissions and promises by Singer there was discussed a purchase by the Singer Steel Company from plaintiff of the unused portion of the latter's steel at the mill in Toronto, Ohio. Thereafter counsel for the Singer Steel Company and counsel for the Joseph Turk Manufacturing Company met on several occasions and prepared drafts of an agreement embodying the proposals that defendant pay the Joseph Turk Manufacturing Company for the 171 tons of steel used by Steel Producers, Inc., in filling defendant's order and the purchase by defendant of the unused portion of the steel belonging to Turk. While counsel were attempting to arrive at a satisfactory written agreement, Singer became convinced that he could not get the steel rolled at Steel Producers' mill and refused to execute the contract.

No payment was made by Steel Producers, Inc., for the 500 tons of steel bars purchased by it from plaintiff.

■ There can be no doubt that plaintiff's sale of 500 tons of steel bars to Steel Producers, Inc., was a conditional sale.

"A contract which provides that the chattel sold is to remain the property of the vendor until the purchase money is paid is a conditional sale [contract]." Bellish v. C. I. T. Corp'n, 142 Ohio St. 36, 50 N.E.2d 147, 150; Speyer v. Baker, 59 Ohio St. 11, 51 N.E. 442; Schlitt v. Cleveland Store Fixture Co., 22 Ohio Cir.Ct.R.,N.S., 168; 35 O. J. Sec. 260, p. 999.

■ As between the parties an unrecorded conditional sale is valid. 35 O.J. 1009; York Mfg. Co. v. Cassell, 201 U.S. 344, 26 S.Ct. 481, 50 L.Ed. 782.

Section 8568, G.C., provides in effect that a conditional sale agreement that is not executed and filed for record as therein specified shall be void as to "subsequent pur-

chasers and mortgagees in good faith and for value, and creditors".

The purpose of the recording statute is to prevent secret liens and to protect "subsequent purchasers and mortgagees in good faith and for value, and creditors" who have relied upon the possession of the vendee as evidence of his ownership of the property.

In Arthur v. G. W. Parsons Co., 224 F. 47–50, the Sixth Circuit Court of Appeals held:

"The purpose of the statute regarding record was to protect third parties dealing with the property by imparting notice to them of the condition of its title. Burbank v. Conrad, 96 U.S. 291, 292, 24 L.Ed. 731; [National] Register Co. v. Lesko, 77 Conn. 276, 280, 58 A. 967."

In Kennison v. International Clay Machinery Co., 13 F.2d 774–776, also decided by the Sixth Circuit Court of Appeals, it was held:

"Section 8568, G.C., does not require conditional sale contracts to be filed with the recorder until the seller surrenders the possession of the goods to the buyer."

To the same effect is In re Imperial Brewing Co., 4 Cir., 127 F.2d 766, 770, wherein the court quoted from Jones on Chattel Mortgages and Conditional Sales, Sec. 1072, p. 148, as follows:

"If the buyer be not in possession, one dealing with him for the property could not be deceived by the appearances of ownership which possession and use present. The reasonable construction of such a statute is that unless, and until, possession has been transferred, recording is unnecessary."

A conditional sale contemplates delivery of possession to the vendee and a reservation of title in the vendor. A conditional sale becomes effective upon delivery of possession.

In the light of the foregoing principles it is reasonable to conclude that by the use of the term "subsequent purchaser" the legislative intention is to extend the protection of the Ohio recording statute to purchasers who deal with the vendee after the latter obtains possession of the property which is the subject of the conditional sale. The term "subsequent purchaser" as used in the statute is therefore construed to mean one who purchases property from the vendee after the latter has acquired the possession thereof, or, as otherwise stated, a "subsequent purchaser" is one who purchases property in reliance upon the vendee's possession as evidence of ownership.

The defendant Singer Steel Company's contract for the purchase of steel from the conditional vendee, Steel Producers, Inc., was executed *before* the steel had been delivered to the vendee. The steel bars were not delivered to Steel Producers, Inc., until September 28, 1948. The defendant placed its order for steel sheets with Steel Producers, Inc., on August 9, 1948. This order was accepted on September 21, 1948. The defendant did not rely upon the vendee's possession of the property and was not a "subsequent purchaser" as that term is used in Section 8568, G.C. If this determination be correct, it is decisive against the claim that the conditional sale from plaintiff to Steel Producers, Inc., is void as to the defendant.

It also appears that defendant knew of plaintiff's reserved interest in the steel bars which were to be used by the vendee in executing defendant's order for steel sheets. The record discloses that at the time of the sale from plaintiff to Steel Producers, Inc., "steel was scarce". The supply was inadequate to meet the demands of industry. Users of steel were hard put to obtain sufficient quantities to meet their needs. In these circumstances the sale of steel from a user of that commodity to a steel rolling mill was no ordinary or customary transaction but one calculated to excite interest and curiosity. Such a sale came to the attention of Albert Singer at a time when he made a loan to the agent who negotiated the deal and while he was contemplating a larger loan to the purchaser of the steel. These factors might well be supposed to evoke a lively interest in the details of the transaction. Stein had full knowledge of the facts relating to the sale from plaintiff to Steel Producers, Inc., including plaintiff's

reservation of title. He testified that he gave all of this information to Singer. This is denied by Singer. But in the context of the circumstances above noted it is unreasonable to suppose that Singer did not inquire and become fully informed about all of the facts that were known to Stein.

When there is added to these considerations the definite statement of Alpirn to either Singer or Mervas that the steel bars belonged to Turk, and Singer's admissions of knowledge on December 7, 1948, the conclusion becomes inescapable that Singer knew of plaintiff's reserved interest in the steel bars sold to Steel Producers, Inc. Singer was put squarely on notice of plaintiff's ownership of the steel bars before they were delivered and before defendant purchased the steel sheets from Steel Producers, Inc. Defendant also knew of Steel Producers' need of working capital. The defendant paid $30,000 to Steel Producers, Inc., in advance of deliveries on its order. This was done, according to the President of Steel Producers, Inc., to enable that company to "meet pay rolls" and to pay rentals. The chief officer of defendant joined with others in forming a corporation that loaned $100,000 to Steel Producers, Inc. Defendant was charged with knowledge of Steel Producers' probable inability to pay for the steel bars, but apparently made no inquiry whether such payment had been made.

The foregoing facts demonstrate a lack of good faith. It is therefore held that defendant, having purchased the property before its delivery to the vendee, was not a "subsequent purchaser" within the meaning of that term as used in Section 8568, G.C., and that, in any event, defendant was not a "subsequent purchaser * * * in good faith". The conditional sale was valid between the parties and valid also as to the defendant.

The defense of estoppel may be dismissed with brief comment.

"It is essential to the existence of an equitable estoppel that the representation, whether consisting of words, acts, or omissions, of the party against whom the estoppel is asserted shall have been believed by the party claiming the benefit thereof and that he shall have relied thereon and been influenced and misled thereby." 19 Am.Jur., Sec. 83, p. 730.

This is also the rule in Ohio. McGovern v. Knox, 21 Ohio St. 547; Ayres v. Cook, 140 Ohio St. 281, 43 N.E.2d 287; Martin v. Steinke, 22 Ohio App. 146, 154 N.E. 47.

Defendant relies upon acts of plaintiff which did not come to defendant's attention at the time of their execution. The receipts for the steel bar which were drafted by plaintiff on or about September 27, 1948,—plaintiff's letter of October 1 to Steel Producers, Inc., in re payment,—and plaintiff's invoices of October 19, 1948,—were all subsequent to the date of defendant's contract of purchase, and it does not appear that defendant had knowledge of the existence of these instruments at the time they were received by Steel Producers, Inc. It may be added that plaintiff's conduct in drafting and forwarding these instruments to Steel Producers, Inc., was entirely consistent with plaintiff's reservation of title. Defendant was not influenced or misled by these acts of plaintiff.

Defendant also relies upon plaintiff's consent to a change in the footweight of the steel bars as a basis for its defense of estoppel. Defendant is in no position to invoke the doctrine of estoppel on this ground. In his testimony at the trial Albert Singer denied any knowledge of the change of footweights. Defendant cannot adopt the inconsistent positions of disclaiming knowledge of a fact in the sworn testimony of its principal officer and assert through its counsel that it was misled by knowledge which it has disavowed. Moreover, defendant's claim in this regard is without merit. The evidence establishes that defendant knew of the change in footweights and actively participated in efforts to secure the change. It is further established that at the time of the change in footweights defendant was informed by plaintiff's agent, Alpirn, that the steel bars belonged to plaintiff.

As hereinabove noted, defendant agreed to purchase the steel before Steel Pro-

ducers, Inc., obtained possession of the property. Therefore its further claim of estoppel based upon possession of the steel bars by the conditional vendee is without factual support and must also be rejected.

There is nothing in the record to support the further claim of defendant that plaintiff granted actual authority, express or implied, to Steel Producers, Inc., to sell the steel bars before paying the purchase price.

■ There is no dispute between the parties that a sale of property by a conditional sale vendee who has not acquired title is a conversion of the property and that an action lies against a purchaser from the original wrongdoer. Section 8403, G.C. of Ohio; Sanders v. Keber & Miller, 28 Ohio St. 630; Hamet v. Letcher, 37 Ohio St. 356. Plaintiff is therefore entitled to recover from defendant.

■ Ordinarily the measure of damages is the market value of the property at the time of conversion. Defendant's evidence of market value is $52 per ton. In the light of market conditions as shown by the record, this figure is unrealistic.

■ Plaintiff submits testimony tending to show a market value of $131.06. In opposition to the acceptance of plaintiff's evidence of market value, defendant argues that plaintiff is limited in its recovery to $105 per ton, which represents its qualified interest in the property as a conditional sales vendor. This argument is sound. As stated in McCormick on Damages (1935), Sec. 123, p. 465, note 7:

"Conditional seller under timber contract recovers against one who purchases from buyer only the price fixed in the original conditional sale, but not the market value."

See also Lugenbeal v. Lemert, 42 Ohio St. 1; McCormick on Damages, p. 465, Sec. 123; 53 Am.Jur., p. 905, Sec. 120.

The amount of plaintiff's recovery is limited to $105 per ton. However, before entering judgment the court will await further information in re the matter referred to in a separate memorandum forwarded to counsel.