Harold W. Bacon, Appellant, v. Village of Oak Lawn, a Municipal Corporation, Harvey N. Wick, President of the Board of Trustees of the Village of Oak Lawn, Fred M. Dunke, and Others, Members of the Board of Trustees of the Village of Oak Lawn, Robert L. Price, Village Manager of the Village of Oak Lawn, and Chicago Bridge & Iron Company, a Corporation, Appellees.

Gen. No. 48,473.

First District, Second Division.

October 24, 1961.

Howard R. Weiss, of Chicago, for appellant.

Winston, Strawn, Smith & Patterson, of Chicago (Calvin Sawyier and Richard A. Barton, of counsel), for appellee, Chicago Bridge & Iron Company, and Gerhardt J. Gliege of Oak Lawn, Illinois, for all other appellees.

MR. PRESIDING JUSTICE FRIEND delivered the opinion of the court.

Plaintiff sought a declaratory judgment, injunctive and other relief against defendants, the Village of Oak Lawn, its officials, and Chicago Bridge and Iron Company, a designer and builder of elevated water tanks, after the village had let a contract for the repair of its water tower to the Bridge and Iron Company. Plaintiff had submitted a lower bid or quotation for this work and brought his complaint on the sole ground that municipal contracts let to other than the lowest bidder were "in violation of the Statutes of the State of Illinois, Smith-Hurd Ill Rev Stats, ch 24, § 23–100." The Bridge and Iron Company moved to dismiss the complaint on the theory that it did not state a cause of action in that the statute does not impose a duty on municipal corporations to require competitive bidding on repair contracts of this type. On the date set for hearing on the motion to dismiss, plaintiff of his own volition sought and obtained leave to file his amended complaint instanter which set forth essentially the same allegations as the original complaint except that instead of alleging that the award of the contract to the defendant Chicago Bridge and Iron Company was in violation of statute plaintiff alleged that the mere letting of a contract to a higher bidder constituted fraud. Again defendants filed a motion to dismiss for the reason that the amended complaint did not state a cause of action. At the hearing on the motion, plaintiff argued that the mere allegation in his complaint that the contract

was not awarded to the lowest bidder created a question of fact for the jury on the issue of fraud. This contention was rejected and, plaintiff electing to stand on his amended complaint, the court "ordered, adjudged and decreed that:

"1. The Amended Complaint herein be, and it hereby is, dismissed with prejudice and without further leave to amend, upon the motion of defendants, Village of Oak Lawn and the individual Trustees thereof;

"2. The motion of defendant, Chicago Bridge & Iron Company, for summary judgment be, and it hereby is, granted and judgment be, and it hereby is, entered for defendants.

"3. The costs of the defendants herein be paid by plaintiff."

Plaintiff appeals.

■ It being conceded that there is no duty imposed by statute or otherwise upon municipal corporations to let a contract for the repair of municipally owned property upon competitive bidding or to let such a contract only to the lowest bidder, the question to be determined is whether the court properly decided the amended complaint to be insufficient at law to state a cause of action, and whether the record, consisting of the pleadings and various documents and affidavits, justified the court in entering summary judgment for the Bridge Company.

Briefly summarized, the amended complaint alleged that plaintiff and his wife Ruth, copartners doing business as Bacon Manufacturing Company, were residents of the Village of Oak Lawn and were solicited on November 4, 1960 by various officials of the village to submit a quotation for certain repairs on the Oak Lawn water tower; that pursuant to such solicitation his company received from the village officials a copy

of a letter dated June 19, 1959, addressed to the Village of Oak Lawn by the Chicago Bridge and Iron Company, which contained an inspection report setting forth the type and degree of repairs required as to the water tower (a copy of this letter was attached and incorporated by reference as a part of the amended complaint). Plaintiff further alleged that pursuant to the request of the village officials he submitted a bid to furnish labor and materials, as required, at the price of $6775; that on November 12, 1960 he received a letter from the village manager advising him that the village president and board of trustees had awarded the contract to the Chicago Bridge and Iron Company; and that upon inquiry he learned that the Bridge Company's contract price was approximately $11,150, a figure far in excess of his bid for the same work.

Plaintiff charged fraud in only two paragraphs of his amended complaint, and in the most general terms; those two paragraphs read as follows:

"10. The contract entered into between the Chicago Bridge & Iron Company and the Village of Oak Lawn is fraudulent. That as some evidence of the fraudulent nature of the transaction referred to is the immense proportionate difference between the bid submitted by Bacon Manufacturing Company in the amount of $6,775 and that of Chicago Bridge & Iron Company approximating $11,150.

"13. That the entire actions of the defendants are fraudulent, capricious and in total disregard of their public responsibilities."

The law is well settled in this State that a party charging fraud must allege facts which, if taken to be true or established by competent evidence, would

228

constitute fraud. In Carroll v. Caldwell, 12 Ill2d 487, 147 NE2d 69 (1957), the court said (p 494):

> "Fraud is never presumed and can be alleged or proved, both at law and in equity, only by allegation and proof of facts constituting the fraud. (Anderson v. Anderson, 339 Ill 400; 19 ILP, Fraud, sec 36). Statements by way of general conclusions of fraud are not sufficient in a pleading. The allegations relied upon by the plaintiff, conditioned as they are on what the defendant may or may not have believed, amount to no more than an argumentative conclusion of fraud and are thus not sufficient to charge the actual fraud necessary to raise a constructive trust. . . ."

To the same effect is Owens v. Green, 400 Ill 380, 392–393, 81 NE2d 149 (1948), which is relied on in Chicago Heights v. Public Service Co. of Northern Illinois, 345 Ill App 393, 103 NE2d 519 (1952), where the court held (p 400) that the mere charge of fraud is not enough.

The single legal issue presented here is whether, in the conceded absence of legal requirements for any competitive bidding, an allegation that a public contract was not given to the party making the lowest dollar proposal is sufficient at law to set forth a cause of action for fraud. We think this issue was conclusively determined in Smith v. Board of Education, 405 Ill 143, 89 NE2d 893 (1950), in which the rule was expressly stated (p 148) that the fact that a public contract was not awarded to the lowest bidder does not sustain an allegation that the contract was fraudulently entered into. A formal competitive bidding procedure is not involved in the instant proceeding; in fact, it is conceded that there is no requirement for competitive bidding, and therefore, as stated in the Smith case, the remaining question to be

determined is whether the allegations of the complaint are sufficient to charge the village trustees with fraud in awarding the contract for repair of the water tower to the Chicago Bridge and Iron Company. The language of the court in the Smith case (pp 148–149) is relevant:

"While the words, 'fraud,' 'fraudulently,' and 'conspiracy,' are used repeatedly, a careful reading of the complaint compels the conclusion that these charges are based on two main allegations, first, that the Board of Education eliminated competitive bidding, and second, that the contract was awarded for a substantially larger sum than might have been bid by other contractors. In the absence of allegations of facts showing fraudulent acts or conduct in connection with the awarding of the contract, this was not sufficient to charge fraud. . . . Neither does the mere fact that the contract was not awarded to the lowest bidder sustain an allegation that the contract was fraudulently entered into by the parties. (Hallett v. City of Elgin, 254 Ill 343.) The presumption obtains that the actions of public officials, in the performance of their official acts, are done in good faith and with honest motives. (Chicago Park Dist. v. Herczel & Co., 373 Ill 325.) It is not enough to merely use the terms 'fraud' or 'fraudulently' in a complaint, because the unexplained use of such terms alleges nothing. Such allegations must include the facts upon which they are based, and a general charge that a party acted fraudulently or was guilty of fraud is not good pleading for the reason that only a conclusion of the pleader is stated. (Owens v. Green, 400 Ill 380.) . . ."

230

Other cases cited in the Smith decision indicate that the rules there enunciated by the court have been consistently followed in this State.

With respect to the declaratory judgment in favor of the defendant Chicago Bridge and Iron Company, it appears that that company had originally constructed the water tower and satisfactorily repaired it on a previous occasion. Plaintiff's bid (designated as a quotation) was an informal one-sheet statement containing three single-line items, followed by the total:

"Repair to Water Tower $3525.00
Painting of Interior Only $1700.00
Painting of Exterior Only $1550.00
 _____
 $6775.00"

In contrast, the bid of Chicago Bridge and Iron Company was a four-page document setting out in detail what repairs were necessary, how they would be effected, what materials and parts would be furnished, and what type and grade of steel and paint would be used. The charge for the decorative exterior painting was approximately the same as plaintiff's, but the charge for repairs and functional interior painting was $9640 as against plaintiff's estimate of $5225. Two other companies also submitted bids for the repair of the water tower, but there is nothing of record as to any of the details or the amounts of their bids. In letting a contract, the total cost of the work is but one of many factors to be considered; in construction work it is important to assess a contractor's ability to perform the work—its equipment, the skill of its workmen, its experience, its reputation, its financial responsibility. The Bridge Company had previously made satisfactory repairs to the water tower, had

demonstrated the competency of its work, and in addition had gained familiarity with the job. The village officials accepted the bid of a firm with which they had had past satisfactory relationships. Had they let the contract solely on the basis of total cost, they would have been acting blindly and irresponsibly; no details were supplied in plaintiff's bid, and the officials had no way of knowing what type of repair work plaintiff planned to do. The old adage, penny-wise can be pound-foolish, is still good economics. Refusal to accept the lowest dollar bid is not fraud per se, and an allegation of such and all inferences a plaintiff may seek to insinuate therefrom are more than offset by the presumption that public officials act in good faith and with honest motives. Smith v. Board of Education, cited above, p 148; People ex rel. Adamowski v. Daley, 22 Ill App2d 87, 92, 159 NE2d 18 (1959). We think that the trial court was correct in deciding, in an action where time was an important consideration—the safety of a village water supply is in peril while this matter continues in litigation—that the facts alleged in the amended complaint were not sufficient to constitute a claim in fraud; thus a trial of that alleged issue is obviated. The public interest requires that such dilatory litigation should be disposed of summarily by motion.

For the reasons indicated, the judgment of the Superior Court, both as to the dismissal of the complaint and as to the entry of summary judgment in favor of the Chicago Bridge and Iron Company, is affirmed.

Judgment affirmed.

BRYANT and BURKE, JJ., concur.