**SKY BANK–OHIO BANK REGION, Appellant,**

**v.**

**SABBAGH et al., Appellees.**

[Cite as *Sky Bank–Ohio Bank Region v. Sabbagh,*
161 Ohio App.3d 133, 2005-Ohio-2517.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 20708.

Decided May 20, 2005.

134

Paul H. Shaneyfelt, for appellant.

James I. Weprin, for appellee Harold Pearson.

Steven C. Katchman, for appellee Master's Title Agency, Inc.

GRADY, Judge.

{¶ 1} This is an appeal from a summary judgment for the defendant in a mortgage-foreclosure action.

{¶ 2} In September 1996, plaintiff-appellant, Sky Bank–Ohio Bank Region ("Sky Bank"), agreed to provide a $45,000 line of credit to Sam Sabbagh. Money loaned would be secured by a mortgage on Sabbagh's residential real property at 7280 Mountain Trail in Centerville. After Sabbagh executed an open-end mortgage on the property in favor of Sky Bank, the mortgage was filed with the Montgomery County Recorder and was recorded.

{¶ 3} Sabbagh thereafter obtained advances on the line of credit. In January 1999, Sabbagh refinanced his debt on the Mountain Trail property. The loan closing took place before February 25, 1999, and was managed by Master's Title, Inc. While the balance owed Sky Bank on Sabbagh's line of credit advances was

paid off, the line of credit remained open, and, in consequence, the open-end mortgage remained in effect. Sabbagh thereafter drew a further advance totaling $45,000 on March 1, 1999.

{¶ 4} In early 1999, Sabbagh signed a contract to sell his Mountain Trail property to defendant-appellee, Harold Pearson. Pearson's prospective lender secured the services of Master's Title to perform a title search and prepare a report of its findings. During its search, Master's Title discovered from examining the electronic register of recorded mortgages maintained by the Montgomery County Recorder that Sabbagh had executed a mortgage in favor of Sky Bank. Instead of examining the recorded mortgage itself, Master's Title inquired by telephone of Sky Bank concerning its mortgage. On March 25, 1999, a Sky Bank employee, Kathy Patterson, faxed a letter to Master's Title stating: "To whom it may concern Sam Sabbagh loan was paid off on Feb. 25 99 Kathy Patterson CSR."

{¶ 5} The record does not indicate precisely what inquiry Sky Bank made to elicit Kathy Patterson's response or what authority she had to bind Sky Bank. In any event, Master's Title apparently took Patterson's statement to mean that the indebtedness secured by Sky Bank's mortgage had been paid off and concluded that the mortgage was not an impediment to Sabbagh's capacity to convey good and marketable title to the property. On March 31, 1999, Pearson purchased the property from Sabbagh.

{¶ 6} Sabbagh obtained further advances on his line of credit from Sky Bank after he sold the property to Pearson. Sabbagh also continued to make payments on his debt to Sky Bank, for a time. When Sabbagh eventually stopped making payments, Sky Bank filed an action to foreclose its mortgage on the property now owned by Pearson. The amount of Sabbagh's debt that was secured by the mortgage totaled $45,000, plus interest.

{¶ 7} Sky Bank and Pearson each filed motions for summary judgment on Sky Bank's claim for relief. Pearson argued that Master's Title reasonably relied on the statement of Sky Bank's employee, Kathy Patterson, that Sabbagh's loan had been paid off to conclude that Sabbagh owned a good and marketable title to the property. Therefore, Pearson argued, because he had relied on Master's Title report, Sky Bank should be equitably estopped from obtaining a judgment on its foreclosure claim against him. The trial court agreed and granted Pearson's motion. The court denied Sky Bank's motion for summary judgment on the same basis. Sky Bank filed a timely notice of appeal.

ASSIGNMENT OF ERROR

{¶ 8} "The trial court erred by denying appellant's Sky Bank–Ohio Bank Region's ('Sky') motion for summary judgment because Sky is entitled to

foreclose on amounts advanced to Sam Sabbagh and secured by an open-end mortgage pursuant to R.C. 5301.232(B). The trial court erred in finding that Sky was precluded from enforcing its right under its mortgage based on the defenses of equitable estoppel and negligent misrepresentation asserted by Harold Pearon [sic] ('Pearson'). The trial court further erred in granting Pearson summary judgment based on his claims for equitable estoppel and for negligent misrepresentation."

{¶ 9} In order to prevail on a motion for summary judgment, a movant must show (1) that there are no genuine issues of material fact, (2) that the movant is entitled to judgment as a matter of law, and (3) that reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmovant. *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 375 N.E.2d 46; Civ.R. 56(C). The evidence must be construed in a light most favorable to the nonmovant. Civ.R. 56(C); *Morris v. First Natl. Bank & Trust Co* (1970), 21 Ohio St.2d 25, 50 O.O.2d 47, 254 N.E.2d 683. In reviewing a trial court's grant of summary judgment, an appellate court must view the facts in a light most favorable to the party who opposes the motion. *Osborne v. Lyles* (1992), 63 Ohio St.3d 326, 587 N.E.2d 825. Further, the issues of law involved are reviewed de novo. *Nilavar v. Osborn* (1998), 127 Ohio App.3d 1, 711 N.E.2d 726.

{¶ 10} The defense of equitable estoppel applies when a party prosecuting a claim for relief has induced the adverse party to believe that certain facts exist and the adverse party changed his position in reasonable reliance thereon, to his detriment. *Ensel v. Levy* (1889), 46 Ohio St. 255, 19 N.E. 597. In order to prevail on a claim of equitable estoppel, a defendant must show (1) that the plaintiff made a factual representation, (2) that the representation was misleading, (3) that defendant acted in good faith reliance on that misrepresentation, and (4) that his reliance had a detrimental result. *Gullatte v. Rion* (2000), 145 Ohio App.3d 620, 627, 763 N.E.2d 1215.

{¶ 11} Estoppel applies only to parties and those in privity with them; mere strangers cannot take advantage of it. Although admissions and declarations may be strong evidence against the party making them, they will operate as an estoppel in favor only of those whose conduct, it may be fairly supposed, they were intended to influence. *Morgan v. Spangler* (1862), 14 Ohio St. 102, 1862 WL 67. It is sufficient if the statements are made to a third party to be communicated to the party whom they are intended to influence. *Globe Indemn. Co. v. Wassman* (1929), 120 Ohio St. 72, 165 N.E. 579.

{¶ 12} Pearson was not in privity with Sky Bank. Neither was Pearson in privity with Master's Title, which performed its title search on behalf of Pearson's lender. Sky Bank and Master's Title were not in privity. The representation of

Sky Bank's employee, Kathy Patterson, was made to Master's Title, not to Pearson. Therefore, it is questionable whether Sky Bank's claims against Pearson may be subject to any equitable-estoppel bar in favor of Pearson.

{¶ 13} Sky Bank does not raise the privity issue. Even so, one might reasonably conclude, as the trial court apparently did, that Pearson was no stranger to the transaction between Sky Bank and Master's Title.

{¶ 14} Though they may secure a title report and insurance for themselves, and should, purchasers of real property typically rely on a title report procured by their lender. That reliance is reinforced by the fact that the purchaser generally reimburses the lender for its expense in procuring the report. If Pearson relied on the report prepared by Master's Title, which itself had relied on the statement of Sky Bank's employee, the further question is whether Pearson acted reasonably in so doing, at least with respect to the statement of Sky Bank's employee that Sabbagh's loan had been paid off.

{¶ 15} Persons who acquire a possessory interest in real property take with constructive notice of instruments of title that are recorded. *Mellon Natl. Mtge. Co. v. Jones* (1977), 54 Ohio App.2d 45, 8 O.O.3d 39, 374 N.E.2d 666. To constitute constructive notice of its provisions, the instrument must be one that by law may be recorded. *Underwood v. Lapp* (App.1939), 29 Ohio Law Abs. 582. County recorders are charged to maintain a record of mortgages. R.C. 317.08(B); R.C. 5302.15. Those records may be summarized in indexes, written or electronic. R.C. 5302.15.

{¶ 16} Open-end mortgages secure the unpaid balance of loan advances made after the mortgage is recorded, to the extent that the total unpaid indebtedness does not exceed the maximum amount that the mortgage states may be secured. R.C. 5301.232(A). An open-end mortgage is proper for that purpose if it contains the heading "Open-end Mortgage." Id. A mortgage that complies with those requirements is a lien on the premises for the full amount of the unpaid balance of advances made by the mortgagee, plus interest thereon, "regardless of the time when such advances are made." R.C. 5301.232(B).

{¶ 17} The mortgage granted to Sky Bank by Sam Sabbagh that Sky Bank filed for record bears the heading "Open–End Mortgage, Home Equity Line" and identifies the maximum amount of the potential indebtedness it secures as $45,000. Therefore, it fully complies with R.C. 5301.232. Prospective purchasers of Sabbagh's property, including Pearson, were thus on notice that absent a release of the mortgage filed by Sky Bank pursuant to R.C. 5301.28, the mortgage secured any advances that were obtained by Sabbagh, regardless of the time when the advances were made. R.C. 5301.232(B).

{¶ 18} Pearson and Master's Title argue that they reasonably relied on the statement of Sky Bank's employee to believe that because no indebtedness was owed, Sky Bank's mortgage was subject to release. An affidavit of Paul LeMaster, owner of Master's Title, states that Master's Title "contacted [Sky Bank] upon discovering a mortgage in its title search and requested a payoff." He further asserts that such telephone inquiries are common practice in the industry and that Master's Title "was not informed of an open line of credit, and without notice from [Sky Bank], [Master's Title] would not have known of an open line of credit." Thus, Pearson and Master's Title contend that upon Master's Title's inquiry, Sky Bank had a duty to advise Master's Title of the nature of its security interest, and because Sky Bank failed to do that and instead provided a misleading response on which Master's Title relied, Sky Bank should be estopped from prosecuting its foreclosure claim to judgment.

{¶ 19} We cannot agree with these contentions. It is the object and purpose of recording an encumbrance on a parcel of real property to furnish notice to the world of the existence of the instrument. *Brown v. Kirkman* (1853), 1 Ohio St. 116, 1853 WL 3. Regardless of any industry practice, Master's Title was on notice of Sky Bank's recorded open-end mortgage and of its provisions. Had Master's Title examined the recorded mortgage, it would have learned that further advances were available to the mortgagor, Sabbagh, after the February 25, 1999 loan payoff to which Kathy Patterson, Sky Bank's employee, referred in her letter.

{¶ 20} Master's Title argues that Patterson's statement of March 25, 1999, though technically correct, was misleading. However, that assumes that the statement concerned a conventional mortgage, which, when paid off, cannot be renewed and must then be released by the mortgagee within 90 days. R.C. 5301.36(B). Master's Title's assumption was incorrect, and it cannot relieve Master's Title of its duty to examine the mortgage record to determine the existence of the open-end mortgage and the rights it conferred. The assumption was even unjustified. Master's Title's own internal records of Sabbagh's February 1999 refinancing contains a handwritten note that Sabbagh wished to pay off the balance he owed but keep the line of credit open.

{¶ 21} Pearson's position in this litigation, in essence, is that he is relieved of the duty to know and be bound by the recordation provisions imposed by statute and the notice resulting from them because he relied on the conclusions of a third party, Master's Title, who failed to fully inspect the record when it performed its title search. That position is untenable. It would create an exception to the notice arising from recording of instruments of title on the basis of negligence on the part of Master's Title as well as undue reliance, both by Master's Title with respect to Kathy Patterson's statement and Pearson with

respect to Master's Title's report. The long-standing advice to purchasers of real property yet applies: if you wish to protect yourself, obtain your own title report.

{¶ 22} We hold as a matter of law that neither Master's Title nor, by extension, Pearson acted reasonably when they allegedly relied on the statement of Sky Bank's employee to conclude that Sky Bank's mortgage was not an encumbrance on the title Sabbagh might convey to Pearson. Therefore, and absent reasonable reliance on their part, Pearson may not prevail on his equitable-estoppel defense to bar the mortgage foreclosure claim for relief that Sky Bank filed in order to satisfy the debt secured by its open-end mortgage.

{¶ 23} The assignment of error is sustained. The trial court's orders granting Pearson's motion for summary judgment and denying Sky Bank's are reversed, and the matter is remanded for further proceedings consistent with this opinion.

Judgment reversed
and cause remanded.

BROGAN, P.J., and YOUNG, J., concur.

FREDERICK N. YOUNG, J., retired, of the Second District Court of Appeals, sitting by assignment of the Chief Justice of the Supreme Court of Ohio.